UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PEOPLE'S UNITED EQUIPMENT
FINANCE CORP.,

                        Plaintiff,

-against-                              **MEMORANDUM AND ORDER**
                                              12-CV-5811 (JS)(AYS)

GOTHAM LOGISTICS, INC., GOTHAM
LOGISTICS OF JFK, INC., HIGHPOINT
LOGISTICS, INC., and
WILLAM CESERETTI

                        Defendants.
----------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

        This is a breach of contract action commenced pursuant to this Court's diversity jurisdiction by Plaintiff People's United Equipment Finance Corp. ("Plaintiff" or "PUEFC"). Briefly stated, Plaintiff seeks to recover amounts owed and collateral pledged pursuant to several loan documents and guaranties. Named as Defendants are: (1) Gotham Logistics, Inc., ("Logistics"); (2) Highpoint Logistics, Inc., ("Highpoint") (3) William Ceseretti ("Ceseretti") and (4) Gotham Logistics of JFK, Inc., ("JFK") (collectively "Defendants"). Logistics, Highpoint and Ceseratti executed the loans and/or guaranties that are the subject of this action. JFK is a third party alleged to be in possession of collateral. <u>See</u> generally DE [1] Complaint and DE [31-1] Remias Affidavit of Damages (hereinafter "Remias Aff.").

        All Defendants defaulted and the District Court has already entered an order of seizure granting Plaintiff immediate possession of all collateral subject to the agreements executed by Logistics, Highpoint and Ceseretti.[1] In addition to seeking the immediate relief of the order of

---

[1] <u>See</u> DE [15] (December 28, 2012, Order of Seizure dated December 28, 2012, directing seizure by United States Marshals of vehicles enumerated in Count IV of Complaint.

1

seizure, PUEFC filed the instant motion a seeking default judgment and an award of damages. DE [31]. The motion was referred to the previously assigned Magistrate Judge by the Honorable Joanna Seybert for a report and recommendation as to whether the motion should be granted, and if so, the amount of any damages to be awarded. See Order referring motion, dated, April 24, 2015. For the reasons set forth below, the Court holds that while PUEFC's motion establishes liability, a hearing pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure is necessary to properly assess the amount of damages and ensure an up-to-date award. The hearing will be held on February 2, 2016 at 2:00 pm or as soon thereafter as is convenient for PUEFC and its counsel.

## BACKGROUND

I. Factual Background

    A. The Parties and the Loans

PUEFC is a Texas Corporation. Compl. ¶1. PUEFC's name was formally changed from Financial Federal Credit Inc. to People's United Equipment Finance Corp. on October 18, 2010. Compl. ¶1. Logistics, Highpoint and JFK are New York corporations. Compl. ¶¶2-5. Ceseretti is an individual residing in this District. As set forth in detail below, PUEFC provided financing to Logistics for working capital and the acquisition of equipment. Compl. ¶7. Two such loans, and a lease were consolidated and restructured as a loan to Highpoint. All obligations under the loans made were guaranteed by Logistics, Highpoint and Ceseretti. Compl. ¶7.

    B. The January 2009 Logistics Loan

On January 30, 2009, Logistics executed a promissory note evidencing a loan made by PUEFC in the amount of $454,480.00. The amount due was to be paid in thirty-eight consecutive monthly installments commencing on February 1, 2009 (the "January 2009 Loan").

Compl. ¶8; Remias Aff. ¶5. The January 2009 Loan was secured by a simultaneously executed security agreement providing PUEFC with a security interest in vehicles set forth in Schedule A to the security agreement, as well as a blanket security interest in essentially all of Logistics' property, inventory and accounts. Compl. ¶9; Remias Aff ¶6. PUEFC perfected its security interest by obtaining a corresponding notice of recorded lien from the New York State Department of Motor Vehicles and the blanket collateral and by filing a UCC-1 financing statement with the New York State Department of State. Compl. ¶10; Remias Aff. ¶7.

  C. <u>The March 2009 Logistics Lease</u>

On March 18, 2009, Logistics and PUEFC entered into a lease agreement pursuant to which Logistics agreed to pay PUEFC rent in the amount of $82,944.00, in twenty-four consecutive monthly payments, commencing on April 18, 2009 (the "2009 Logistics Lease"). Compl. ¶11; Remias Aff. ¶8. The 2009 Logistics Lease was secured by a security interest in all of the trailers set forth on Schedule A annexed thereto, as well as a second blanket security interest. Compl. ¶12; Remias Aff. ¶9. PUEFC perfected its security interest in the same manner as set forth above with respect to the January 2009 Logistics Loan. Compl. ¶13; Remias Aff. ¶10.

  D. <u>The June 2009 Logistics Loan</u>

On June 16, 2009, Logistics executed a promissory note evidencing a loan made by PUEFC in the amount of $343,488.00, to be paid in forty-eight consecutive monthly installments commencing on August 19, 2009 (the "June 2009 Logistics Loan"). Compl. ¶14; Remias Aff. ¶11. Like the January 2009 Logistics Loan, the June 2009 Logistics Loan was secured by a simultaneously executed security agreement providing PUEFC with a security interest in vehicles set forth in Schedule A to the security agreement, as well as a blanket security interest in

Logistics' property, inventory and accounts. Compl. ¶15; Remias Aff. ¶12. Again, PUEFC perfected its security interest by the filing of appropriate financing documents. Compl. ¶16; Remias Aff. ¶13.

  E. <u>The Highpoint Consolidation and Restructuring</u>

On January 28, 2010, Highpoint executed a promissory note with PUEFC for $911,568.00, to be paid in fifty consecutive monthly installments, commencing on March 1, 2010 (the "Highpoint Note"). Compl ¶18; Remias Aff. ¶15. The Highpoint Note represented a consolidation and restructuring of the January 2009 Logistics Loan, the March 2009 Logistics Lease, the June 2009 Logistics Loan (collectively the "Logistics Loan Documents") and their associated security agreements covering all vehicles referred to therein (the "Logistics Vehicles") as well as the property and accounts pledged in connection the blanket security interests pledged therewith (the "Logistics Blanket Collateral"). Compl. ¶17. In addition to pledging to PUEFC the previously pledged security interests in the Logistics Vehicles as well as an ongoing interest in the Logistics Blanket Collateral, Highpoint entered into a security agreement (the "Highpoint Security Agreement"). The Highpoint Security Agreement pledges to PUEFC a blanket security interest in all property and accounts of Highpoint (the "Highpoint Blanket Collateral"). Compl. ¶¶19-20; Remias Aff. ¶16. As with its prior security interests, PUEFC perfected its security interests in the Highpoint Blanket Collateral by the proper filing of financing documents with the New York State Department of State. Compl. ¶21, Remias Aff. ¶17.

On or about the date of execution of the Highpoint Loan and the Highpoint Security Agreement, Logistics executed a guaranty to PUEFC for the indebtedness and obligations owed by Highpoint to PUEFC (the "Logistics Guaranty") Remias Aff. ¶20i. The Logistics Guaranty is

4

stated to form part of the consideration extended to PUEFC in exchange for executing and funding the Highpoint Note. Compl. ¶26a. At the same time, individual Defendant Ceseretti executed a guaranty to PUEFC for the indebtedness and obligations owed by Highpoint to PUEFC (the "Cereretti Guaranty") Remias Aff. ¶20ii. The Ceseretti Guaranty, like the Logistics Guaranty, is stated to form part of the consideration extended to PUEFC in exchange for executing and funding the Highpoint Note. Compl. ¶26b. The Logistics Guaranty and the Ceseretti Guaranty (collectively, the "Guaranties") provide for Logistics and Ceseretti to be directly and unconditionally liable to PUEFC, jointly and severally, for the payment and performance of all indebtedness owed to PUEFC under the loan and associated agreements set forth above. Compl. ¶28.

F. Provisions for Acceleration of Indebtedness

All of the Highpoint and Logistics documents described above provide for acceleration of all indebtedness due in the event of default. Compl. ¶23, Remias Aff. ¶24. As to Highpoint, the Highpoint Security Agreement provides that in the event of default PUEFC may: (i) accelerate the maturity of the indebtedness and obligations owed by Highpoint and declare that same be at once due and payable; (ii) require Highpoint and Logistics to deliver any and all of the Logistics Vehicles, the Logistics Blanket collateral and the Highpoint Blanket Collateral; and (iii) repossess/take possession of any of the Logistics Vehicles. Compl. ¶24. The Highpoint Security Agreement further provides that if PUEFC commences an action after a default under the agreement, PUEFC is entitled to the issuance of a writ or order of possession without the need to post any bond. Compl. ¶25.

II. The Complaint

Plaintiff's Complaint sets forth four causes of action. Count One is asserted against Highpoint, alleging breach of the Highpoint Note. That cause of action alleges Plaintiff's full performance of its obligations to Highpoint, and states that Highpoint has failed to make payments due beginning on May 1, 2011 and continuing to date. Compl. ¶¶29-31. PUEFC alleges its right to accelerate the unpaid balance, and states there is, (as of November 19, 2012 -- the date of the complaint), due and owing to PUEFC from Highpoint the amount of $720,270.08, plus interest, costs and attorneys' fees. See Compl. Count I. The Second Count of the Complaint is asserted against Logistics and Ceseretti as guarantors. That cause of action alleges that PUEFC fully performed all of its duties and obligations and that the Guarantors have failed to make the required payments. Compl. ¶¶35-39. Count Three of the Complaint includes a claim against JFK. That claim sounds in conversion, alleging wrongful detention of the Logistics Vehicles by Defendants. Compl. ¶¶41-47. Finally, Count Four of the Complaint seeks repossession of the Logistics Vehicles. Compl. ¶¶48-55.

As to relief sought, PUEFC seeks: (a) $720,270.88 in compensatory damages as of November 19, 2012, plus interest, costs and attorneys' fees; (b) a judgment against Highpoint, Logistics, JFK and Ceseretti, jointly and severally, granting PUEFC possession of the PUEFC collateral, the right to foreclose its interest by selling, leasing or otherwise disposing of same, and an order directing seizure of same and to disclose the whereabouts of the PUEFC equipment; (c) judgment against the Defendants jointly and severally, ordering disclosure and surrender of any and all accounts receivable of Highpoint to PUEFC; (d) attorney's fees; (e) interest; and (f) the costs of this lawsuit. See also Remias Aff. ¶30.

III.     Prior Proceedings as Reflected on the Docket Herein

    A.     The Complaint and the Order of Seizure

Plaintiff filed the Complaint on November 26, 2012. DE [1]. Service was thereafter properly made upon all Defendants. DE [9-12]. The previously assigned Magistrate Judge issued a scheduling order on December 4, 2012. DE [6]. On December 13, 2012, Plaintiff filed an order to show cause seeking immediate seizure of the Logistics Vehicles. On December 28, 2012, Defendants failed to appear before the District Court, and the requested order of seizure was granted as unopposed. DE [13]. On the same day as the hearing, an order of seizure was issued directing that the U.S. Marshal seize and deliver the following tractors and trailers:

| QUANTITY | YEAR | MODEL | DESCRIPTION | SERIALNUMBER |
|---|---|---|---|---|
| One (1) | 1999 | | Great Dane 53" Van Trailer | GRAA0629XB088304 |
| One (1) | 1999 | | Great Dane 48" Van Trailer | GRAA9628XB016014 |
| One (1) | 1998 | | Strick 48" Van Trailer | 1S12E9488WD430207 |
| One (1) | 1998 | | Strick 48" Van Trailer | 1S12E9482WD430204 |
| One (1) | 1998 | | Strick 48" Van Trailer | 1S12E9489WD430202 |
| One (1) | 2007 | | Hyundai 53" Van Trailer | 3H3V532C37T113005 |
| One (1) | 2007 | | Hyundai 53" Van Trailer | 3H3V532C67T112009 |
| One (1) | 2002 | | Trailmobile 53" Van Trailer | 1PT01JAH126002640 |
| One (1) | 2002 | | Trailmobile 53" Van Trailer | 1PT01JAH526002639 |
| One (1) | 1998 | | Utility 53" Van Trailer | 1UYVS253XWP392548 |
| One (1) | 1998 | | Utility 53" Van Trailer | 1UYVS2532WP392513 |
| One (1) | 1998 | | Utility 53" Van Trailer | 1UYVS2538WP392502 |
| One (1) | 1998 | | Utility 53" Van Trailer | 1UYVS253XWP392517 |
| One (1) | 1999 | | Utility 53" Van Trailer | 1UYVS2539WP388765 |
| One (1) | 1999 | | Utility 53" Van Trailer | 1UYVS2539XCB93813 |
| One (1) | 2005 | CL120 | Freightliner Tractor | 1FUJA6CK85LU36658 |
| One (1) | 2005 | CL120 | Freightliner Tractor | 1FUJA6CK85LU36661 |
| One (1) | 2005 | CL120 | Freightliner Tractor | 1FUJA6CK25LU36669 |
| One (1) | 2000 | FDL120 | Freightliner Tractor | 1FUPDSZB6YLF47489 |
| One (1) | 1999 | FDL12064 | Freightliner Tractor | 2FUYDSZBXWA908145 |
| One (1) | 1999 | CH613 | Mack Tractor | 1M1AA13Y0XW105623 |
| One (1) | 1999 | FLD120 | Freightliner Tractor | 1FYUDSEB1XLA05516 |
| One (1) | | 3000R | Utility 53' x 102' Trailer | 1UYVS25396U793610 |

DE [15].

    B.    <u>Defendants' Default</u>

On February 25, 2013, PUEFC sought entry of default of Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. DE [21]. The request for default noted that a summons had been served on each of the Defendants, and that the time to answer or otherwise move had expired. See DE [9, 10, 11 and 12]. On February 26, 2013, the Clerk of the Court noted the default of all Defendants. DE [24].

C. Proceedings after Notation of Defendants' Default

On February 27, 2013, an attorney filed a notice of appearance on behalf of Ceseretti and moved to vacate the default. DE [22-23]. Magistrate Judge Tomlinson held an initial conference on March 1, 2013, during which she declined to vacate Ceseretti's default. DE [26]. At the conference, it was noted that as of that date, Plaintiff had recovered only five items from Judge Seybert's order of seizure. DE [26]. Magistrate Judge Tomlinson ordered Ceseretti to provide an accounting of all vehicles as well as requested insurance information. DE [26]. On March 4, 2013, Ceseretti responded to the order of Magistrate Judge Tomlinson, confirming that PUEFC had five of the vehicles, providing last known information regarding the location of the remaining eighteen vehicles, and confirming that, to his knowledge, no insurance policies exist. DE [27].

On July 28, 2014, counsel for Ceseretti filed a sealed motion to withdraw as counsel. DE [29]. On September 24, 2014, Judge Seybert held a hearing, and granted the motion to withdraw. DE [30].

D   The Present Motion for Default

On February 6, 2015, PUEFC filed the presently pending motion for default. DE [31]. In an order dated April 24, 2015, the motion was referred to the previously assigned Magistrate

8

Judge DE [32]. This case was thereafter reassigned, and the motion and referral are therefore properly before this Court. See DE [33].

In support of the motion PUEFC notes that Highpoint and the Guarantors defaulted on monthly payment obligations beginning on May 1, 2011, and that PUEFC thereafter elected to accelerate all indebtedness due. Remias Aff ¶30. In addition to seeking payments due, PUEFC seeks all accrued and unpaid interest, late charges, and a prepayment premium. PUEFC waives attorneys' fees in an effort to expedite entry of judgment. Remias Aff. ¶¶23-29.

PUEFC explains that the unpaid balances due is $720,270.08. This amount consists of $576,322.97 in outstanding principal amount, $77,307.64 in accrued and unpaid interest at the rate of 12.77%, $29,754.80 in accrued and unpaid late charges, and $36,884.67 as a contractual prepayment premium. Remias Aff. ¶30. PUEFC applies a credit reflecting amounts received from the repossession and sale of the six items of equipment obtained pursuant to the order of seizure at DE [15]. As to such sale, PUEFC states that it has received $92,502. Therefore, the amount owed to PUEFC as of June 1, 2013, after the credit is stated to be $675,185.4. Remias Aff. ¶34. PUEFC also claims it is entitled to additional interest that has accrued from June 1, 2013 until judgment is entered and seeks $147,294.47 in interest to February 6, 2015, plus a per diem of $239.50 in additional interest, until judgment is entered. Remias Aff. ¶35. As of February 6, 2015, plaintiff seeks a total of $822,479.71 plus $239.50 per day thereafter until the date judgment is entered. Remias Aff. ¶38.

## DISCUSSION

I.   Legal Standards on Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. Joe Hand Promotions, Inc. v. El

9

Norteno Rest. Corp., 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.1992), cert. denied, 506 U.S. 1080 (1993); BMG Music v. Pena, 2007 WL 2089367, at *2 (E.D.N.Y. 2007).

When a default is entered, all well-pleaded factual allegations in the complaint are accepted as true. Greater N.Y. Nursing Home Div. of 1199/SEIU Greater N.Y. Benefit Fund v. Verrazano Staffing, Inc., No. 05 CV 4116, 2007 WL 1480777, at *2 (E.D.N.Y. Mar. 28, 2007). The court must still determine, however, based on the well-pleaded facts in the complaint, whether the allegations state a claim upon which relief can be granted. Au Bon Pain Corp. v. Artect. Inc., 653 F.2d at 65 (holding that "a district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action"); see also Garden City Boxing Club, Inc. v. Giambra, No. 02 CV 839S, 2004 WL 1698633, at *1 (W.D.N.Y. July 27, 2004) (holding that "[p]rior to entering default judgment, the court must determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause of action").

In reviewing the sufficiency of the Complaint, Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that defendants have "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To satisfy this standard, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009).

II. Liability

Because liability is based upon the well-pleaded facts in the complaint and whether the allegations state a claim upon which relief can be granted, this Court must review the pleading elements of a breach of contract claim. The elements of a breach of contract claim under New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach," Kramer v. New York City Bd. of Educ., 715 F.Supp.2d 335, 356 (E.D.N.Y.2010) (quoting RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC., 156 Fed. Appx. 349, 350–51 (2d Cir.2005) (citing Marks v. New York Univ., 61 F.Supp.2d 81, 88 (S.D.N.Y.1999))). First Nat. Bank of Arizona v. Nat'l Lending Corp., No. 06 CV 2768 ARR, 2011 WL 1315998, at *8 (E.D.N.Y. Mar. 14, 2011) report and recommendation adopted, No. 06-CV-2768 ARR CLP, 2011 WL 1253659 (E.D.N.Y. Mar. 31, 2011).

A review of the complaint indicates that PUEFC has adequately pled its breach of contract claim. As set forth in detail above, PUEFC has properly alleged the existence of various contracts with the Defendants, PUEFC's full performance of its obligations thereunder, non-performance by the Defendants and that, as a result, PUEFC is owed money in damages flowing from the breach. See sections I and II supra. Based upon the uncontroverted evidence, PUEFC has stated a cause of action for breach of contract.

III.   Damages

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. See Garden City Boxing Club, Inc. v. Morales, 2005 WL 2476264, at *3 (E.D.N.Y. 2005); see Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 854 (2d Cir.1995). Once such liability is established, the only question remaining is whether Plaintiff provides adequate support for the relief he seeks. Greyhound Exhibitgroup, Inc., 973 F.2d at 158. The

moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Id. at 159. Rule 55(b)(2) of the Federal Rules of Civil Procedure gives the court discretion to determine whether to hold an evidentiary hearing or to rely on affidavits to determine damages. Action S.A. v. Marc Rich and Co., Inc., 951 F.2d 504, 508 (2d Cir. 1989).

This Court finds that while PUEFC has established liability, the Court will exercise its right to hold a hearing as to the appropriate damages award. At the hearing, PUEFC should be prepared to present detailed calculations, as well as the corresponding contractual provisions supporting the award of the amounts requested. In addition, PUEFC should be prepared to provide detailed calculations for the numbers being requested to date. The hearing is sought to ensure that a damages award is precise and current to date.

## CONCLUSION

For the foregoing reasons, the court directs Plaintiffs to appear for an inquest on damages to be held before this Court on **February 2**, **2016**, at **2:00 P.M**. In the event that this date is inconvenient for Plaintiffs or counsel, counsel shall request an adjournment setting forth three alternative dates upon which the inquest may be held.


Dated: Central Islip, New York
       January 25, 2016

                                                    /s/ Anne Y. Shields
                                                    ANNE Y. SHIELDS
                                                    United States Magistrate Judge